UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:18-cv-12136-PBS

|   |   |
|---|---|
| THE NETHERLANDS INSURANCE COMPANY as subrogee of GCP CROWN COLONY, LLC and LIBERTY MUTUAL FIRE INSURANCE COMPANY as subrogee of ONEX YORK HOLDINGS CORP. d/b/a CARE WORKS MANAGED CARE SERVICES f/k/a MCMC LLC, <br><br>  Plaintiffs, <br><br> v. <br><br> HP, INC. and INSIGHT DIRECT USA, INC., <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO EXCLUDE PLAINTIFFS' EXPERTS AND FOR SUMMARY JUDGMENT**

In accordance with this Court's Order of June 23, 2022, the defendants submit this supplemental memorandum in support of their motion to exclude plaintiffs' experts (*Doc. 61*) and for summary judgment (*Doc. 64*). This memorandum addresses questions raised by the Court at the hearing on the defendants' motions.

1. **Courts frequently consider *Daubert* motions in connection with motions for summary judgment when a plaintiff's case is dependent on expert testimony**

At the hearing on the defendants' motions, the Court asked about the timing of the motion to exclude plaintiffs' experts, noting that *Daubert* motions are typically raised as motions *in limine* closer to trial. The defendants responded that it made sense to bring this *Daubert* motion now, as plaintiffs' products liability case is dependent on expert testimony, and without expert testimony, the case is subject to dismissal on summary judgment. *Morse v. Ford Motor Co.*, No. 08-11930-

RGS, 2010 U.S. Dist. LEXIS 69834 (D. Mass. July 13, 2010), cited in support of the defendants' motion for summary judgment, was discussed very briefly. The defendants now bring to the Court's attention the following cases which were cited in a footnote in their *Daubert* motion:

### a. Cases involving entry of summary judgment where plaintiffs' experts were excluded for failing to follow NFPA 921

***Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054 (8th Cir. 2005)**

The plaintiff alleged that a fire started in a Canon copier. Canon moved for summary judgment on the grounds that plaintiff's expert opinions were inadmissible, leaving the plaintiffs with no evidence of a defect in the copier. *Id.* at 1057. "The district court granted Canon's motion, concluding that the expert opinions were unreliable and potentially confusing to a jury. The district court further held that, even if the expert opinions were admitted into evidence, the plaintiffs could not demonstrate that the alleged defects caused the fire." *Id.* The Eighth Circuit agreed with the District Court's reasoning and affirmed its decision. *Id.* at 1059-60. [1]

***Presley v. Lakewood Eng'g*, 553 F.3d 638 (8th Cir. 2009)**

This case involved a fire allegedly started by a space heater. The defendant moved to exclude plaintiffs' expert for failure to follow NFPA 921 and for summary judgment. The District Court excluded the expert's opinion for failure to "apply reliably the standards of NFPA 921 to his theory," and it granted summary judgment because, without the expert's testimony, "plaintiffs could not produce sufficient evidence that the...heater was…the cause of the fire." *Id.* at 643. The Eighth Circuit affirmed, holding that the District Court's reasoning was correct. *Id.* at 647.

***Hartford Ins. Co. v. Gen. Elec. Co.*, 526 F. Supp. 2d 250 (D.R.I. 2007)**

The plaintiff alleged that a house fire started in a GE water dispenser. The defendants moved to exclude the plaintiff's experts and for summary judgment. *Id.* at 251. The Court held

---

[1] The deficiencies in the experts' opinions case were strikingly similar to the deficiencies in Elliott's methodology.

that the plaintiff's experts failed to meet the "stringent standard" set under *Daubert*. *Id.* at 252. It thus granted the defendants' motions to exclude the expert and for summary judgment, holding, "[I]n the absence of the [expert] testimony, no reasonable jury could find that the alleged defect in the water dispenser was the proximate cause of the house fire." *Id.* at 254.

**Chester Valley Coach Works v. Fisher-Price, Inc., No. 99 CV 4197, 2001 U.S. Dist. LEXIS 15902, 2001 WL 1160012 (E.D. Pa. Aug. 29, 2001)**

The plaintiff contended that the fire started in its commercial building was caused by the defendant's product. The defendant moved for summary judgment, arguing that the plaintiffs' origin and cause expert must be excluded for failing to comply with NFPA 921. *Id.* at *18. The Court agreed, holding that because plaintiff's liability expert was excluded, the "[p]laintiffs lack[ed] sufficient evidence to establish the cause of the fire." *Id.* at *42.

### b. HP's successful *Daubert* and summary judgment motions in *Gopalratnam v. Hewlett-Packard Co.,* 877 F.3d 771 (7th Cir. 2017)

The plaintiffs in *Gopalratnam* alleged that a fatal fire was caused by a defective battery cell in an HP notebook computer. 877 F.3d at 775. HP moved to exclude the plaintiffs' experts under Rule 702 and *Daubert*. *Id.* at 778. HP also moved for summary judgment "on the theory that, without their experts, plaintiffs could not prove causation." *Id.* The District Court agreed that the plaintiffs' experts' opinions were unreliable and thus excluded them. *Id.* "Because the court excluded their expert testimony, it further found that plaintiffs could not support their claim that a defective lithium ion battery cell [caused the fire]. As a result, the court granted summary judgment in favor of defendants." *Id.* The plaintiffs appealed, and the Seventh Circuit affirmed. *Id.* at 790.

### c. Cases from within the First Circuit

In these cases, the courts excluded the plaintiffs' experts and granted summary judgment to the defendants since the plaintiffs lacked the necessary expert testimony to support their claims:

***Calisi v. Abbott Labs.,*** **Civil Action No. 11-10671-DJC, 2013 U.S. Dist. LEXIS 139257 (D. Mass. Sep. 27, 2013)**

The plaintiff alleged that Abbot had failed to warn her about the alleged risk of developing lymphoma from taking the drug Humira. *Id.* at *5. Abbott moved to exclude the plaintiff's "warnings" expert under Rule 702 and for summary judgment. *Id.* at *6-8. The Court agreed with Abbott that the plaintiff's expert failed to meet the requirements of Rule 702. *Id.* at *36. Having stricken the expert, the Court found that the plaintiff "cannot show the inadequacy of the warning about lymphoma…Accordingly, there is no triable issue of fact as to this necessary element as to [the warnings] claims…and Abbott is entitled to summary judgment," *Id.* at *13.

***López-Ramírez v. Toledo-González,*** **32 F.4th 87 (U.S. 1st Cir. 2022)**

This case involved a somewhat different scenario, but it demonstrates the connection between *Daubert* motions and motions for summary judgment. In this medical malpractice action, the defendant moved to exclude the plaintiff's expert under Rule 702 for lack of sufficient support for his opinions. *Id.* at 94. The District Court granted the motion and then invited the defendant to move for summary judgment, which it subsequently granted. *Id.* at 93. The First Circuit affirmed the decision to exclude the expert. *Id.* at 95. Then, noting that "in a medical malpractice case under Puerto Rico law a factfinder normally cannot find causation without the assistance of expert testimony," (*id.* at 98), the First Circuit affirmed summary judgment for the defendant.

***Elwell v. Conair, Inc.,*** **145 F. Supp. 2d 79 (D. Me. 2001)**

This was a products liability case in which the defendant moved to exclude the plaintiff's expert in accordance with *Daubert,* and for summary judgment, arguing that without an expert, the plaintiff could not prove her case. The court noted that although it would ordinarily reserve ruling on a motion to exclude expert testimony, because the defendant's motion for summary judgment was predicated on the inadmissibility of plaintiff's experts, it was appropriate to rule on

4

the admissibility issue at that time. *Id.* at 90. The Court then ruled in the defendant's favor, excluding the expert. *Id.* Because the expert was excluded, the court granted summary judgment to the defendant, noting that liability could not "be established without expert testimony, and that the only expert testimony offered by the plaintiff on this point is the excluded…testimony. Accordingly, the defendant is entitled to summary judgment." *Id.* at 91.

2. **Noonan and Elliott's Failure to Comply with NFPA 921**

During the hearing, the Court also asked whether defendants' criticisms of plaintiffs' experts go to the weight, not the admissibility, of their opinions. Given the lack of scientific method and compliance with NFPA 921, plaintiffs' expert opinions should be excluded because they are not based on sufficient facts or data and are not the product of reliable principles and methods as required by Fed.R.Evid. 702. As summarized below, Noonan's work consisted of taking photos of the fire scene (without giving it "much thought") and relying on a firefighter's non-investigation:

- Noonan never tested his hypothesis that the fire originated in the 4250n. As he candidly admitted at his deposition, "I may have made a preliminary thought determination for myself [as to the origin of the fire] without any further electrical engineering that would be necessary to confirm that." *Doc. 62-6* at 41:2-6. He also admitted that he never considered arcing of the p3015's power cord as a possible cause of the fire. *Id.* at 35:3-4; 45:8-17. He thus violated NFPA 921-2017 4.3.9 (expectation bias can result in a conclusion that is "not scientifically valid"); NFPA 921-2017 4.3.7 (investigations should be approached "without a presumption of origin"); NFPA 921-2017 18.5.1 (investigator must "attempt to identify other feasible origins, and to keep all reasonable origin hypotheses under consideration until sufficient evidence is developed to justify discarding them.") and NFPA 921-201718.7 ("the failure to consider alternate hypotheses is a serious error.")

- Noonan testified that he relied on burn patterns in the cubicle to arrive at his opinion, but he admitted that he made *no observations* about the burn patterns "other than that they were visible." *Doc. 62-6* 35:20-36:2 He admitted that he "didn't give [the burn patterns] much thought other than just photographing" them. *Id.* at 35:20-36:2. This is not just a bad investigation; it is no investigation.

- Noonan opines that the 4250n was the origin of the fire because it sustained significant damage, yet, he admitted (because he must) that the degree of damage may not be an adequate indication of origin. *Doc. 62-6* at 35:14-19. *See* NFPA 921-2017 26.3.2 ("The degree of damage to the appliance may or may not be an adequate indication of origin."). In other words, he relied on evidence that is equally likely to have no significance at all.

- Noonan based his conclusion that the fire originated in the 4250n on firefighter Lentini's deposition testimony (*Doc. 62-6* at 29:10-15), but he did not know what actions, if any, Lentini took to investigate the fire. *Id.* at 38:23-39:4. As stated in prior briefs, Mr. Lentini did no investigation himself. *Doc. 67-5* at 39:1-14; 40:2-5.

Elliott's conclusions likewise should be excluded for failure to comply with Rule 702 and the requirements of NFPA 921:

- Despite testing exemplar 4250n printers, Elliott did not identify the component of the printer that allegedly failed that resulted in a fire(*Doc. 62-9* at 31:7-11), in violation of NFPA 921-2017 26.4.6 ("If the ignition scenario requires the failure or malfunction of one or more appliance components, this can also be tested for validity on the exemplar.").

- Elliot does not explain in his report how the safety features in the 4250n failed and, thus, resulted in a fire (*Doc. 62-5* at 18), violation of NFPA 921-2017 19.7.3 ("The cause determination will need to account for the actions of safety devices.").

6

- Elliott did not demonstrate how the 4250n could generate sufficient heat to start a fire, in violation of NFPA 921-2017 26.4.1.1 (investigator must demonstrate "how the appliance generated sufficient heat energy to cause ignition"). The only way he could get the 4250n to catch fire was to light it on fire with a butane torch. *Doc. 62-8* at 5; *Doc. 62-5* at 17.

3. **Elliott's testing of exemplar 4250n printers proves the defendants' position that the 4250n was attacked by an external fire**

Finally, it bears repeating that Elliott's testing of exemplar printers only served to confirm the defendants' position that the 4250n was attacked by an external fire. As previously noted, the only way Elliott's testing of a 4250n exemplar *was for Elliot to set it on fire himself* using a butane torch. In other words, his testing, such as it was, involved an external fire attacking the 4250n. This proves the defendants' point that the 4250n did not "self-ignite" from a defect. Therefore, even if this Court were to admit Elliott's testimony, it would be compelled to grant the defendants' motion for summary judgment on the grounds that Elliott cannot demonstrate that the 4250n caused the subject office fire.

> Respectfully submitted,
> Defendants, HP, Inc.., and
> Insight Direct USA, Inc.,
> By their attorneys,
>
> */s/ Elizabeth A. Doubleday*
> Christopher G. Betke, BBO# 552588
> Elizabeth A. Doubleday, BBO# 666693
> Coughlin Betke LLP
> 175 Federal Street
> Boston, MA 02110
> (617) 988-8050
> cbetke@coughlinbetke.com
> edoubleday@coughlinbetke.com

## **CERTIFICATE OF SERVICE**

      I, Elizabeth A. Doubleday, do hereby certify that on this 30th day of June, 2022, I filed a copy of the within documents via the ECF system.

                                                  */s/ Elizabeth A. Doubleday*

                                                  Elizabeth A. Doubleday