UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE NETHERLANDS INSURANCE COMPANY as subrogee of GCP CROWN COLONY, LLC and LIBERTY MUTUAL FIRE INSURANCE COMPANY as subrogee of ONEX YORK HOLDINGS CORP. d/b/a CARE WORKS MANAGED CARE SERVICES f/k/a MCMC LLC,<br><br>      Plaintiffs,<br><br>v.<br><br>HP, INC. and INSIGHT DIRECT USA, INC.,<br><br>      Defendants. | No. 18-cv-12136-DLC |

**ORDER ON PLAINTIFFS' MOTION TO COMPEL (DKT. NO. 75)**

Cabell, U.S.M.J.

I. **Introduction**

In this products liability case, which stems from a late-night printer fire in an office building, the plaintiffs seek an order compelling defendant and printer manufacturer HP, Inc. ("HP") to provide information about other alleged printer fires. HP opposes the motion, arguing, among other things, that the plaintiffs' request is untimely and disproportionate. For the following reasons, the court agrees with HP and denies the motion to compel.

## II. **Background**

The court presumes the reader's familiarity with the facts of the case as set forth in its order on the defendants' motion for summary judgment. *See* (Dkt. No. 93); *Netherlands Ins. Co. v. HP, Inc.*, --- F. Supp. 3d ---, 2022 WL 17417799 (D. Mass. 2022). The fire at issue occurred on April 25, 2017. (Dkt. No. 78, ¶ 1). This litigation began in state court in August 2018 and was removed here in November 2018. (Dkt. No. 4, p. 2). Following several amendments to the scheduling order, the deadline for written discovery requests was November 8, 2019, while the deadline to complete non-expert depositions was April 30, 2021. (Dkt. No. 13; Dkt. No. 18; Dkt. No. 32; Dkt. No. 33). The case is scheduled to go to trial on January 23, 2023. (Dkt. No. 92).

During discovery, on unspecified dates, the plaintiffs issued the two requests at the heart of this motion. The first was the following interrogatory:

> Please identify all other incidents, other than the incident alleged in the Complaint[,] for which HP has received written notice of a claim or complaint, or for which litigation has been filed, in which it has been alleged that the HP Model or Related HP Products caused a fire which resulted in either personal injury or property damage for the period from 2000 to the present, including in your answer for each lawsuit the case caption, the court in which the litigation was filed and the docket number, and for each claim or complaint, the claimant's or complainant's name and address, and including all claims made through the United States Consumer Product Safety Commission.

2

Case 1:18-cv-12136-DLC   Document 97   Filed 12/30/22   Page 3 of 10

(Dkt. No. 75, ¶ 5).  The plaintiffs defined "HP Model" as the "HP LaserJet 4250n printer," the model that caught fire in this case. (*Id.* at ¶ 5 n.5).  They defined "Related HP Products" as "all printers, regardless of model number, sold or distributed by HP that contain the same components as the one[s] contained in the HP Printer [that caught fire in this case]."  (*Id.* at ¶ 5 n.6).  The second request sought all supporting documentation for the claims or complaints described in the first request.  (*Id.* at ¶ 7).  In response to both requests, HP indicated that there have been no other lawsuits or claims alleging that the HP Model caused a fire. (*Id.* at ¶¶ 6, 8).  HP objected to the portions of the requests regarding Related HP Products.  (*Id.*).

Subsequently, the plaintiffs took HP's deposition on January 14, 2021 pursuant to Federal Rule of Civil Procedure 30(b)(6). (*Id.* at ¶ 9).  HP's designee testified that he was unaware of any claims or lawsuits relating to fires in the HP Model or "two other HP LaserJet printers in the same family of printers."  (*Id.* at ¶ 13).  Counsel for HP instructed the designee not to answer questions regarding fires in other HP printers.  (*Id.*).

The plaintiffs moved for leave to file this motion to compel on June 9, 2022.  (Dkt. No. 75).  The court granted leave to file on December 6, 2022 and treated the motion to compel as having

3

been filed. (Dkt. No. 95). HP timely filed its opposition to the motion to compel on December 20, 2022. (Dkt. No. 96).

### III. Discussion

#### A. Timeliness

While Federal Rule of Civil Procedure 37(a) governs motions to compel, it does not impose any deadline on filing such motions. Even so, district courts may place restrictions on the timing of discovery and related motions by virtue of their "broad discretion in pretrial management matters." *Curet-Valazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 54 (1st Cir. 2011); *see also Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999) ("A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes."). In that vein, the court may deny a motion to compel as untimely, particularly if the delay would place an undue burden on the party from whom production is sought. *See Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 58-59 (1st Cir. 2010) (affirming denial of motion to compel filed after deadline for production requests); *Alharbi v. TheBlaze, Inc.*, 199 F. Supp. 3d 334, 347-48 (D. Mass. 2016) (finding motion to compel filed after close of discovery timely).

The deadline for written discovery in this case was in November 2019. The plaintiffs first presented the motion to compel in June 2022. The lapse of time between those two events is

extraordinary. Even if the court were to charitably infer that the plaintiffs had good reason not to move to compel before seeking the desired information through HP's Rule 30(b)(6) deposition, *see Alharbi*, 199 F. Supp. 3d at 347-48 (noting that court would have denied motion to compel if it were filed prior to key depositions), that still leaves a 17-month gap between the deposition and the motion. Courts have denied motions to compel for less. *See Mod. Cont'l/Obayashi v. Occupational Safety and Health Review Comm'n*, 196 F.3d 274, 280-81 (1st Cir. 1999) (upholding denial of motion to compel filed two weeks after close of discovery); *Burgos-Martinez v. City of Worcester*, 345 F. Supp. 3d 105, 106-07 (denying motion to compel filed four months after close of discovery); *Flynn v. Health Advocate, Inc.*, Civil Action No. 03-3764, 2005 WL 288989, at *8 (E.D. Pa. Feb. 8, 2005) (three months). The plaintiffs offer no explanation for why they waited until June 2022, in the thick of litigating summary judgment, to bring this matter to the court's attention. As such, the court finds that the motion to compel is untimely.

### B. Relevance and Proportionality

Although untimeliness alone is a sufficient reason to deny the motion to compel, the motion is also defective because it seeks improper discovery. The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ.

5

P. 26(b)(1).  Proportionality depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  While the material sought must be relevant, it "need not be admissible in evidence to be discoverable."  *Id.*  The court must limit any proposed discovery outside of this scope.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

The plaintiffs flatly assert that "[o]ther HP printer fires, particularly those occurring in HP LaserJet [printers] and those involving printers in sleep mode, are plainly relevant to this lawsuit."  (Dkt. No. 75, ¶ 15).  Rather than developing this assertion, though, the plaintiffs instead discuss *Dubuque v. Cumberland Farms, Inc.*, 93 Mass. App. Ct. 332 (2018), without explaining how that case is relevant to the issue presented here.[1] But even ignoring the lack of clarity in the plaintiffs' analogy to *Dubuque*, their reliance on the case is misplaced.  *Dubuque* concerned a wrongful death action in which the plaintiff's decedent was hit and killed by a speeding vehicle while walking into a Cumberland Farms store.  *Dubuque*, 93 Mass. App. Ct. at 333.  Prior

---

[1] Apart from a brief reference to Federal Rule of Civil Procedure 37(a)(3)(B) as the basis for the motion to compel, *Dubuque* is the only legal authority the plaintiffs cite.

to that accident, Cumberland Farms had compiled a report of 485 similar car strikes at its other stores between January 1, 2000 and January 28, 2010.  *Id.* at 340-41.  The trial court admitted evidence of those prior strikes, in the first instance as proof of notice to Cumberland Farms, and in the second instance as proof of Cumberland Farms' negligence or gross negligence if the jury first found that the prior strikes "were substantially similar to the incident at issue."  *Id.* at 344.  The Massachusetts Appeals Court found that the trial court did not abuse its discretion in so admitting the evidence.  *Id.* at 344-46.  The plaintiffs note that "the standard for admission of prior claims as evidence at trial is a higher one than that pertaining to the discovery of prior claims."  (Dkt. No. 75, ¶ 16).

As a decision of the Massachusetts Appeals Court regarding Massachusetts evidence law, *Dubuque* has little precedential value here.  *See* (Dkt. No. 1, ¶ 11); 28 U.S.C. § 1332.  A federal court sitting in diversity jurisdiction applies state substantive law and federal procedural law.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  As both the Federal Rules of Civil Procedure and the Federal Rules of Evidence are procedural, they apply here.  *Hanna*, 380 U.S. at 467-69 (Civil Procedure); *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534, 539 (1st Cir. 2019) (Evidence); *see also* Fed. R. Civ. P. 1 ("These rules govern the

7

procedure in all civil actions and proceedings in the United States district courts."); Fed. R. Evid. 1101(b) ("These rules apply in . . . civil cases and proceedings, including bankruptcy, admiralty, and maritime cases.").

Inapplicability aside, the plaintiffs fail to explain how the admission of prior car strikes in *Dubuque* by analogy entitles them to information about other claimed HP printer fires.  At the outset, there is a meaningful distinction between the report in *Dubuque*, where Cumberland farms tabulated and acknowledged the existence of the car strikes, and the claims or complaints of printer fires that the plaintiffs seek.  HP presumably has not acknowledged liability in all such claims, and some of them may be incorrect or even baseless.  Regardless, the plaintiffs do not articulate how other claimed fires in other printer models may help prove what caused the fire in the printer in *this* case.  Contrary to the plaintiffs' assertion, these other fires are not "plainly relevant."  Their relevance is unclear at best.

Moving beyond relevance, the proportionality inquiry here weighs heavily in favor of HP.  The plaintiffs assert that HP can easily produce the requested information because it maintains a database of all alleged printer fires.  (Dkt. No. 75, ¶¶ 17-18).  What this assertion ignores is that the plaintiffs' definition of "Related HP Products" in their discovery requests encapsulates

8

"all printers . . . *that contain the same components* as the one[s] contained in the HP Printer [at issue here]." (Dkt. No. 75, ¶ 12, n.6) (emphasis added). Even if HP has a database of all claimed printer fires sorted by printer model – a proposition that HP does not contest – it would still have to determine which of its printers contain some or all of the same components as the HP LaserJet 4250n. It would also have to compile all the supporting documentation it has for each of those claims, some going as far back as 22 years. This is much more than pressing a few buttons to generate a database printout.[2]

Additionally, insofar as the plaintiffs seek information about other HP printer fire litigation, including "for each lawsuit the case caption, the court in which the litigation was filed and the docket number," (Dkt. No. 75, ¶ 5), this information is already available to the plaintiffs, just as it is to any member of the public. *See* Fed. R. Civ. P. 26(b)(1) (listing "parties' relative access to relevant information" as a proportionality factor). The plaintiffs are free to do their own research into HP's litigation history; the court will not compel HP to do it for them.

---

[2] The plaintiffs may counter that HP can avoid at least some of these difficulties by producing information about all claims regarding fires in HP LaserJet printers, especially since HP admitted that all LaserJet printers operate in the same way. *See* (Dkt. No. 75, ¶ 14). However, operating in the same way is not the same as containing the same components. Moreover, the plaintiffs have not identified which components or categories of components are really of interest (e.g., circuit boards as opposed to the printer's outer casing).

9


In short, the plaintiffs' request is untimely, and they have failed regardless to demonstrate that the discovery they seek is relevant. Even assuming they could, the quantum and quality of the information sought is uncertain and any relevance would be outweighed by the burden production would impose on HP, especially given the plaintiffs' access to publicly available litigation documents.

**IV. Conclusion**

For the foregoing reasons, the plaintiffs' motion to compel is DENIED.[3]

So Ordered.                              /s/ Donald L. Cabell
                                         DONALD L. CABELL, U.S.M.J.

DATED:  December 30, 2022

---

[3] While the motion to compel is denied, that does not mean that HP will be able to argue or present evidence about a lack of other printer fires at trial.